Pamela K. MARTENS, Judith P. Mione, Roberta O'Brien Thomann, Lorraine Parker, Bette Laswell, Jennifer Alvarez, Marianne Dalton, Patricia Clemente, Simone Schwendener, Cara Beth Walker, Edna Broyles, Robin Tompkins, Stephanie Rodruck, Daniele Saccone, Beverly Trice, Lori Hurwitz, Lydia Klein, Eileen Valentino, Patricia Hanlon, Teresa Tedesco, Mary Ann Cabell, Ardis Vinnecour, and Tracy Gibbs, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

SMITH BARNEY, INC., a/k/a Shearson/American Express a/k/a Shearson Lehman Brothers a/k/a Shearson Lehman Brothers Holdings, Inc., Shearson Lehman Hutton a/k/a Shearson Lehman Brothers, Smith Barney/Shearson, Inc., James Dimon, Nicholas Cuneo, the New York Stock Exchange, and the National Association of Securities Dealers, Defendants.

No. 96 CIV. 3779(CBM).

United States District Court, S.D. New York.

Dec. 2, 1999.

Stowell & Friedman, by Linda D. Friedman and Mary Stowell, Chicago, IL, Class Counsel for Plaintiffs.

Garrison, Phelan, Levin–Epstein, Chimes & Richardson, P.C., by Gary Phelan, New Haven, CT, for Pamela K. Martens and Judith P. Mione.

Paul, Weiss, Rifkind, Wharton & Garrison, by Brad Karp, New York City, for Smith Barney and James Dimon.

Theodore A. Kresbach & Associates, P.C., by Theodore A. Kresbach and William F. McGovern, New York City, for Nicholas Cuneo.

National Association of Securities Dealers, by Terri L. Reicher, Washington, DC, for NASD.

Milbank, Tweed, Madley & McCloy, by Russell E. Brooks, New York City, for NYSE.

## OPINION

MOTLEY, District Judge.

The plaintiffs, a class of female employees at Smith Barney, Inc. ("Smith Barney") brought this action alleging workplace gender discrimination and challenging the securities industry practice of requiring arbitration of statutory discrimination claims. A settlement of the class claims has dismissed all defendants except the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers ("NASD").

The court now grants the NASD and NYSE motions to dismiss Count VII, the only count in which plaintiffs name NASD and NYSE as defendants. The Due Process Clause claim against the NASD and NYSE is dismissed because these two organizations exercise insufficient state action to trigger constitutional due process protections. The Title VII gender discrimination claim against NASD and NYSE is dismissed in keeping with the Second Circuit's recent ruling that requiring arbitration of Title VII claims does not violate the statute.

Defendants Smith Barney and James Dimon have filed a motion to compel arbitration regarding the employment discrimination claims of Pamela K. Martens and Judith P. Mione, two named plaintiffs who opted out of the class settlement and thereby opted out of the class litigation. The court reserves decision on this motion, and instead now clarifies the implications of such an opt out by named plaintiffs. In order to temper the effect on these two plaintiffs of any possible misunderstanding of the ramifications of their opt out decision, the court now grants Pamela K. Martens and Judith P. Mione the opportunity to rejoin the class and participate in the court-approved class settlement as per its terms as named plaintiffs. Martens and Mione may exercise this option by submitting a written statement of intent to rejoin the class and participate in the class settlement within thirty days of the date of this opinion and attached order.

## I. BACKGROUND

### A. The Parties

Plaintiffs filed this action on behalf of a class of female employees at Smith Barney. Smith Barney is a securities brokerage firm engaged in brokerage, investment banking, and asset management services. Defendant NASD operates the Nasdaq Stock Market. Defendant NYSE maintains and provides facilities for NYSE members to purchase and sell securities. Both NASD and NYSE are corporations that serve as self-regulatory or-

ganizations subject to review by the Securities and Exchange Commission (SEC). Both organizations enforce standards of conduct for member securities firms and oversee securities arbitrations. All other defendants are entities or individuals affiliated with Smith Barney (along with Smith Barney, collectively referred to as the "Smith Barney defendants").

## B. The Allegations

The plaintiffs have alleged that the Smith Barney defendants committed gender discrimination, sexual harassment, and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Counts I, III, IV); paid women lower wages for their work in violation of Title VII and the Equal Pay Act of the Fair Labor Standards Act, 29 U.S.C. §§ 206–207, 215 ("FLSA") (Count II); mandated arbitration, to the exclusion of a judicial forum, of any statutory claims in violation of Title VII and the Due Process Clause of the Fifth Amendment of the United States Constitution ("the Due Process Clause") (Counts VI, VII); denied leave time for the birth of a child in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") (Count VIII); retaliated against protected Title VII, FLSA, and FMLA complaints in violation of those statutes (Count V, IX); and also violated various state statutes, city statutes, and common law protections with the above actions (Counts X–XIX).

Only Count VII of plaintiffs' complaint names NASD and NYSE as defendants. In Count VII, plaintiffs seek a declaratory judgment that mandatory arbitration of discrimination claims constitutes a denial of due process of law by depriving the plaintiffs of their rights under the United States Constitution and Title VII. Smith Barney requires its employees, as a condition of employment, to register with securities exchanges, including NASD and NYSE. Prospective registrants were required to sign the Uniform Application for Securities Industry Registration ("Form U–4"), a provision of which requires arbitration for certain employment disputes, including Title VII claims. The SEC similarly requires brokers, traders, and certain other securities industry employees to register with securities exchanges. Plaintiffs allege that, in order to satisfy these registration requirements, prospective employees were required to consent to mandatory arbitration of employment discrimination claims.

## C. Procedural History

The NASD and NYSE defendants moved to dismiss under Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)") for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim. Before decision on those motions, the plaintiff class reached a proposed settlement with the Smith Barney defendants. The court first rejected the proposed settlement in June of 1998. *See generally Martens, et al. v. Smith Barney, et al.*, 181 F.R.D. 243 (S.D.N.Y. 1998). The court then approved a modified settlement in July of 1998, *Martens, et al. v. Smith Barney, et al.*, 96 Civ. 3779(CBM) (S.D.N.Y. July 24, 1998) (final order and judgment approving class action settlement and dismissing claims against the Smith Barney defendants) ("Settlement Order").

In approving the class settlement by order dated July 24, 1998, the court dismissed all the Smith Barney defendants, but not NASD and NYSE, from this class action. This settlement afforded plaintiffs the right to opt out of the settlement. Pamela K. Martens and Judith P. Mione exercised this opt out right. The only class claim remaining before the court is the Count VII claim against NASD and NYSE for their policy and practice of requiring arbitration of statutory discrimination claims. In Count VII, the plaintiffs argue that this policy and practice violates the Due Process Clause and violates Title VII. The court now grants the motions by NASD and NYSE to dismiss Count VII.

## II. ANALYSIS

### A. Motion to Dismiss Standards

#### 1. Distinction Between Rule 12(b)(1) and 12(b)(6) Dismissal

NASD and NYSE have moved to dismiss under both Rule 12(b)(1) for lack of subject

matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. In contrast, a dismissal under Rule 12(b)(6) is a dismissal on the merits of the action—a determination that the facts alleged in the complaint fail to state a claim upon which relief can be granted." *Nowak v. Ironworkers Local 6 Pension Fund, et al.,* 81 F.3d 1182, 1187 (2d Cir.1996). Granting a motion under 12(b)(6) would dismiss a claim with preclusive effect; denying a motion under 12(b)(6) necessarily implies that a claim is properly within the court's jurisdiction. Accordingly, under the circumstances of this case, the court agrees that "the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to [Rule 12b(6) ]." *Nowak,* 81 F.3d at 1188 (internal citations omitted).

### 2. Standards for Rule 12(b)(6) Dismissal

A motion to dismiss for failure to state a claim upon which relief can be granted should be granted under Rule 12(b)(6) only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, "this court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir.1998) (internal citations omitted). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Gant, et al. v. Wallingford Bd. of Educ., et al.,* 69 F.3d 669, 673 (2d Cir.1995) (internal citations omitted).

### B. Count VII

In Count VII the plaintiffs seek declaratory judgment that mandatory arbitration of discrimination claims pursuant to the form U–4 deprives them of due process of law. At the time this lawsuit was filed in 1996, the Second Circuit had not yet ruled on this issue and the plaintiffs had some chance of success in pursuing their argument. However, as is often the case in lengthy and complex litigation, the legal landscape has been significantly altered since the inception of this case. The Second Circuit's recent decision in *Desiderio v. NASD,* 191 F.3d 198 (2d Cir.1999) foils plaintiffs' attempt to pursue Count VII. In *Desiderio,* a bank had offered the plaintiff employment as a securities broker, contingent upon her registration with NASD. NASD required prospective registrants to sign the Form U–4, a provision of which required arbitration for certain employment disputes, including Title VII claims. The *Desiderio* plaintiff unsuccessfully sought a declaratory judgment to invalidate the mandatory arbitration provision. While the *Desiderio* case was pending, NASD, with SEC approval, amended its rules to remove the mandatory arbitration provision. This voluntary rule change did not render the controversy moot because both NASD and NYSE might later amend their rules to revert to the mandatory arbitration policy. *See Desiderio v. NASD,* 191 F.3d 198, 202 (2d Cir.1999). In *Desiderio* the Second Circuit deflated plaintiffs' Title VII claim by ruling that the statute does not preclude mandatory arbitration of Title VII claims.

The Second Circuit's holding in *Desiderio* similarly hampers plaintiffs' constitutional claims by ruling that NASD, like NYSE, is not a state actor as regards the type of activities relevant to both that and this case. A threshold problem with the plaintiffs' constitutional due process claim is that the defendants are private, not public, entities. While "most rights secured by the Constitution are protected only against infringements by governments," they also are protected against infringements by private entity ac-

tions "fairly attributable" to the government. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). As private organizations exercising exclusive regulatory authority pursuant to federal law, NASD and NYSE straddle the border between the private and public realms. In a statement that applies equally to the NYSE, it has been noted that "the exact status of the NASD is unsettled: it is granted governmental-type powers for some functions while maintaining its private nature for others." *Ross, et al. v. Bolton, et al.*, 106 F.R.D. 315, 316 (S.D.N.Y.1984) (rejecting NASD's claim of law enforcement privilege against discovery of investigative files). This dual public/private status requires caution in reading precedents because a ruling that an exchange is private for a particular purpose does not necessarily mean that it is private for all purposes, as the Second Circuit noted in *United States v. Solomon*, 509 F.2d 863 (2d Cir.1975). In *Desiderio* the Second Circuit held that although NASD may be subject to substantial governmental regulation, it remains a private actor and cites a previous holding that NYSE is a private actor as well. Since *Desiderio* involved precisely the same type of NASD and NYSE actions as are relevant in the case before this court, the ruling governs.

■ In light of the governing precedent set by *Desiderio*, the court now grants defendants' motion to dismiss Count VII under Rule 12(b)(6). Accepting as true all of the factual allegations of the complaint, plaintiff has absolutely no possibility of prevailing on Count VII. There is no possible evidence which plaintiffs could proffer which would persuade this court to grant the declaratory judgment plaintiffs seek when the Second Circuit so recently denied such a judgment in a nearly identical scenario.

## C. Clarification of the Effect of Named Plaintiffs' Decisions to Opt Out of the Settlement

The Smith Barney defendants currently have a motion pending to compel arbitration of the employment discrimination claims of Pamela K. Martens and Judith P. Mione, two named plaintiffs who had previously worked in a Smith Barney sales office in New York. Alternatively, Smith Barney's motion seeks to dismiss or stay the action regarding these two plaintiffs. Prior to ruling on these pending motions the court now takes this opportunity to offer clarification on the effect of a decision to opt out of the court-approved settlement.

It is undisputed that in registering with the NYSE and NASD, both Martens and Mione signed forms purporting to offer their consent to arbitrate employment related disputes. Smith Barney now seeks to enforce these mandatory arbitration provisions. As explained above, plaintiffs' challenges to mandatory arbitration in general are destined to fail. However, this court has not yet addressed the lawfulness of the specific arbitration procedures proposed by Smith Barney. Prior to ruling on Smith Barney's motions, this court must first determine whether Martens and Mione, as opt out plaintiffs, properly have any individual claims remaining before this court. This court now recognizes that given the timing of approving a class settlement, usually soon after certifying the class, some opt out plaintiffs may not have fully understood the effect of a decision to reject the settlement. This was the case with Martens and Mione, who appeared at the hearing to object to the settlement prior to its approval by this court as if they were still members of the class. The claimed right to object to the proposed settlement was denied at the time.

In the interest of equity, prior to ruling on the pending motions this court now chooses to clarify the effect of opting out of the settlement and offer the named plaintiffs who opted out the opportunity to rejoin the class.

In 1996, various named plaintiffs, including Pamela K. Martens and Judith P. Mione, filed the original complaint on behalf of themselves and all others similarly situated. Plaintiffs filed this complaint seeking to pursue a class action. Their subsequent motion to certify a class was granted. The required notice was given to prospective class members notifying them of their right to opt out of the certified class. Martens and Mione exercised their right to opt out.

This court's subsequent order approving the final settlement effectively ended the action and this court's jurisdiction over it, with one exception not relevant here.

It is not entirely clear, however, that Martens and Mione fully understood the effect of their decision to opt out. Martens and Mione took no action to assert individual claims before this court for the remainder of 1998 or the first five months of 1999. However, in June of 1999 counsel for Martens and Mione sought to pursue discovery in this effectively concluded action. In August of 1999 the Smith Barney defendants moved to compel arbitration and to dismiss or alternatively stay the action regarding Martens and Mione. This motion represents Smith Barney's first attempt to compel arbitration as the original complaint filed by plaintiffs was styled as a class action and thus exempt from mandatory arbitration by NASD and NYSE policy.

Prospective plaintiffs who opt out of a class settlement effectively opt out of the entire class litigation. *See generally In re Del–Val Financial Corp. Securities Litigation*, 162 F.R.D. 271 (S.D.N.Y.1995). *Del–Val* involved a securities fraud class action in which some plaintiffs excluded themselves from the class settlement with one defendant and unsuccessfully sought to participate in the class settlement with remaining defendants. In that case the court opined, "It is axiomatic that an individual who requests exclusion from a class certified for the purposes of litigation is opting out of the entire litigation . . . . . . the putative class members' request for exclusion from the class had the effect of excluding them from the entire litigation." *Del–Val*, 162 F.R.D. at 275. The court further asserted "no precedent exists for permitting class members to opt out of a class, whether certified for purposes of settlement or otherwise, with respect to some defendants or claims but not others". *Del–Val*, 162 F.R.D. at 276. Of particular interest to this court, the *Del–Val* court recognized that some opt out plaintiffs might have operated under good faith misunderstandings of the effect of opting out and the court exercised its discretion to temper the effect this would exert on these opt-out plaintiffs.

The *Del–Val* court clarified the implications of opting out and then employed its equity powers to afford opt out plaintiffs a short window of opportunity during which to reenter the class if they so desired.

Like the court in *Del–Val*, this court harbors some concerns that the named plaintiffs who opted out of the settlements may have misunderstood the full implications of their decision. It is particularly important to offer clarification here because opting out by named plaintiffs is an unusual enough occurrence that its discussion in the case law is quite limited. When plaintiffs file a suit as a class action, judicial approval of any settlement is required to ensure that a proper balance is struck between the rights of the named plaintiffs who have brought the case forward and the remaining class members they purport to represent. If an opt out right is provided, then it is clear that non-named class members who opt out have no further business before the court hearing the class action. Such class members are free to file separate individual claims or seek to intervene to the extent the procedural rules permit, but they have no right to pursue individual claims before the court hearing the class action at the same advanced stage of litigation to which the class has moved the case. Such a policy would allow opt out plaintiffs to benefit from the work the class had done to move the case forward without being subject to any of the constraints which bind class members.

█ The status of named plaintiffs who opt out of a class is somewhat less clear. When named plaintiffs initially file a suit styled as a class action, they file a claim on behalf of themselves and all others similarly situated. It is not clear whether any individual claims survive class certification or if certification effectively merges all claims before the court into the class claim. The efficiency afforded by the class action procedure would be poorly served if numerous class members were permitted to opt out of the class and then remain in the litigation with supposedly resurrected individual claims. It is clear that named plaintiffs, like non-named plaintiffs, who opt out of a settlement no longer remain in the class in any

capacity and if they wish to pursue their unique cases they must actively do so separate from the class. In order to temper the effect of any possible good faith misunderstanding by certain opt out plaintiffs, the court will now grant named plaintiffs who opted out of the settlement thirty days to rejoin the plaintiff class. The court will reserve decision on Smith Barney's pending motions until this thirty day period has expired.

## III. CONCLUSION

For the reasons outlined above, the court now grants defendant NYSE's and defendant NASD's motions to dismiss. The Due Process Clause claim against the NASD and NYSE is dismissed because these two organizations exercise insufficient state action to trigger constitutional due process protections. The Title VII gender discrimination claim against NASD and NYSE is dismissed in keeping with the Second Circuit's ruling that Title VII does not preclude NASD or NYSE from seeking mandatory arbitration of brokers' Title VII claims.

The court also now clarifies the consequences of named plaintiffs' opting out of the court-approved settlement. Opting out of the settlement excludes such plaintiffs from the terms of the settlement and removes such plaintiffs from the class litigation. This court now chooses to follow the precedent set by another court within this district and allow named plaintiffs who opted out a brief period of time during which to reconsider their opt out decision in light of this clarification. Thus, the court now allows Pamela K. Martens and Judith P. Mione to elect to rejoin the plaintiff class and participate as named plaintiffs as per the terms of the court-approved settlement agreement. Martens and Mione may exercise this option by submitting such request in writing to the court within thirty days of the date of this opinion and attached order.